# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ELAINE RIAZI, )<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>ALLY FINANCIAL, INC., )<br>)<br>    Defendant. ) | Case No. 4:17CV1705JCH |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaim. (ECF 12). The Motion is fully briefed and ready for disposition.

## BACKGROUND

On June 16, 2017, Plaintiff Elaine Riazi filed a Complaint against Defendant Ally Financial, Inc., (Ally) based on the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*. (ECF 1). As relevant, the TCPA, 47 U.S.C. § 227(b)(1), provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-
>
> . . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone

service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

Riazi's Complaint alleges that Ally made harassing phone calls to her cellular phone, without consent, in violation of the TCPA. (ECF 1). Specifically, Riazi alleges: Ally placed calls to her cellular telephone; the calls were not for emergency purposes; the calls were to collect payments on an alleged debt; Ally placed these calls by using an automatic telephone dialing system (ATDS); Riazi withdrew any prior express consent for Ally to use an ATDS to call her cell phone; on June 29, 2016, Riazi instructed Ally to stop calling her cell phone; since that date, Ally called Riazi's cell phone approximately two hundred times; Riazi also received numerous text messages from Ally; Riazi received numerous voicemails from Ally where she heard beeps or silence on the other end of the line; Ally used an ATDS to place these calls and texts; and Ally placed these calls voluntarily and of its own free will. Riazi seeks statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each willful violation. (ECF 1, ¶¶ 7-29).

On August 14, 2017, Ally filed an Answer, Affirmative Defenses and Counterclaim. (ECF 11). Ally's counterclaim alleges Breach of Contract in that Riazi breached a Retail Installment Sale Contract (the Contract) whereby she agreed to purchase a vehicle. In support of its counterclaim Ally alleges: the Contract was assigned to Ally; Riazi failed to make timely payments under the Contract; Riazi is in default of the Contract; Ally made a demand of Riazi to cure

her default; and Riazi has "failed to cure." Ally seeks judgment of "not less than $16,052.43, plus finance charges" of 14.45%, and additional sums including late fees, attorneys' fees and costs incurred by Ally in connection with "retaking, holding and selling the vehicle" at issue. (ECF 11 at 9-12).

In the pending Motion, Riazi seeks dismissal of Ally's counterclaim for lack of subject matter jurisdiction because the counterclaim does not assert a basis for federal jurisdiction and is not derived from a common nucleus of operative facts. Riazi argues that permitting Ally to proceed on its counterclaim would dissuade TCPA plaintiffs from asserting their rights.

In response to the pending Motion, Ally argues that courts have held that supplemental jurisdiction is proper over a breach of contract counterclaim in relation to a claim under the TCPA, and that the Court has supplemental jurisdiction because its breach of contract counterclaim "forms part of the same case or controversy as Plaintiff's TCPA claim." Additionally, Ally argues that this Court should consider "the common law factors of judicial economy, convenience, fairness and comity," and that "this Court should exercise jurisdiction over its Counterclaim because it has a right to defensive set-off." (ECF 13 at 1-10).

## LEGAL FRAMEWORK

"[J]urisdiction is a threshold question and must be answered before all other questions." *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) (citing *Auto-*

3

*Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007)). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and "all civil actions" where the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. The supplemental jurisdiction of federal courts is provided for in 28 U.S.C. § 1367(a) as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution.

(emphasis added).

Section 1367(a) "grants federal courts supplemental jurisdiction over claims over which no original jurisdiction exists" and "applies to state law claims brought by a plaintiff as well as to counterclaims brought by a defendant." *Sparrow v. Mazda Am. Credit*, 385 F. Supp.2d 1063, 1066 (E.D. Cal. 2005)).

"Claims within [an] action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'" *Myers v. Richland Cnty*, 429 F.3d 740, 746 (8th Cir. 2005) (quoting *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation omitted). Thus, "to establish supplemental jurisdiction, the claims within the action must derive from a

common nucleus of operative fact." *Auto-Owners*, 495 F.3d at 1024 (internal punctuation, brackets and quoted case omitted). "[C]laims derive from a common nucleus of operative fact if the 'claims are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding.'" *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Myers*, 429 F.3d at 746).

Although § 1367(a) requires the mandatory exercise of supplemental jurisdiction over claims that are "so related to claims within" the court's original jurisdiction that they are "part of the same case or controversy," "subsection (c) provides exceptions" and "grant[s] district courts discretion to reject supplemental jurisdiction" under specified circumstances, including "in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287 (8th Cir. 1998) (quoting 28 U.S.C. § 1367(c)(4)).

As relevant, in regard to compulsory counterclaims, Fed. R. Civ. P. 13(a)(1) provides: "A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." "[A]ny claim that is not compulsory" is permissive. Fed. R. Civ. P. 13(b).

"Although a separate statement alleging jurisdiction is not necessary to

support a compulsory counterclaim, a permissive counterclaim does require a basis of jurisdiction independent from that supporting the main claim." *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson Cty., Mo.*, 747 F.2d 1195, 1197 (8th Cir. 1984). A "[pleading] 'say[s] enough about jurisdiction'" if it "'create[s] some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear.'" *Graf v. Pinnacle Asset Group, LLC*, 2015 WL 632180, at *4 (D. Minn. Feb. 12, 2015) (unreported) (quoting *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) (internal quotation and other citation omitted). "A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party." Fed. R. Civ. P. 13(c).

"Some courts have concluded that supplemental jurisdiction under § 1367(a) . . . extends only to compulsory counterclaims, which by definition must arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claim." *Graf*, 2015 WL 632180, at *3 (citations to examples omitted). Other courts have concluded "that the 'case or controversy' language of § 1367(a) provides for supplemental jurisdiction over compulsory counterclaims and 'at least some permissive counterclaims.'" *Id.* (citations to examples omitted). These latter courts have held that "supplemental jurisdiction extends to those permissive counterclaims that, although not arising from the same transaction or occurrence

under Rule 13(a), nonetheless 'form part of the same case or controversy' as required under § 1367(a)." *Id.* Therefore, under a framework providing that supplemental jurisdiction applies "over at least some permissive counterclaims," the inquiry as to whether jurisdiction exists does not "'end[] with the compulsive/permissive distinction.'" *Id.* (quoting *Sparrow*, 385 F. Supp.2d at 1070).

Courts that have concluded that supplemental jurisdiction exists over at least some permissive counterclaims "have [further] concluded that supplemental jurisdiction extends to those permissive counterclaims that, although not arising from the same transaction or occurrence under Rule 13(a), nonetheless 'form part of the same case or controversy' as required under § 1367(a)." *Graf,* 2015 WL 632180, at *3 (citing *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210-14 (2d Cir. 2004) (other citations omitted).

To further complicate matters, courts have reached different conclusions as to whether a permissive counterclaim for the collection of an underlying debt in a federal consumer protection action "is the type of permissive counterclaim that falls within [a] [c]ourt's supplemental jurisdiction." *Graf,* 2015 WL 632180, at *5 (citing cases brought pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*). *See also Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp.3d 811 (S.D. Tex. 2014) (asserting supplemental jurisdiction over

7

defendant's breach of contract claim; finding that defendant did not violate the TCPA, that plaintiff breached the contract by failing to make required payments, and that defendant was entitled to recover damages for defendant's breach of contract counterclaim); *Cabrera v. Courtesy Auto, Inc.*, 192 F. Supp.2d 1012, 1020-22 (D. Neb. 2002) ("Because permissive counterclaims by definition do not arise from the same transaction or occurrence as the main claim, in most cases a court will not have supplemental jurisdiction over the counterclaim."; acknowledging that "[t]here is a split among the circuits on the question of whether in a [Truth in Lending Act] action a counterclaim on the underlying debt is compulsory or permissive"; and finding counterclaim to recover deficiency on contract for purchase of a car was permissive but that the exercise of supplemental jurisdiction over that state law claim was unwarranted).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) [of the Federal Rules of Civil Procedure], [a] [counterclaim] must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). When a facial challenge to jurisdiction is made, a court is restricted to the face of the pleadings, and all factual allegations concerning jurisdiction in the counterclaim are presumed to be true. When a factual challenge is made, no presumptive truthfulness attaches. A motion

asserting a facial challenge to a counterclaim will be successful if the defendant fails to allege an element necessary for subject matter jurisdiction. *Titus*, 4 F.3d at 593 & n.1 (citations omitted).

## DISCUSSION

As Riazi makes a facial challenge, not a factual challenge, to Ally's counterclaim, the Court will presume the truthfulness of Ally's allegations concerning jurisdiction. *Titus*, 4 F.3d at 593 & n. 1.

Further, Ally's counterclaim does not fall within the Court's original jurisdiction, as it does not arise under federal law. 28 U.S.C. §§ 1331, 1332. For the Court to have jurisdiction over Ally's counterclaim, it must, therefore, be pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

Riazi asserts, and Ally does not specifically deny, that Ally's counterclaim is permissive rather than compulsory. (ECF 12 at 3; ECF 13 at 4).[1] In any case, because Ally's counterclaim is for the collection of an underlying debt, it is permissive. *See Graf*, 2015 WL 632180, at *5 (in FDCPA action, counterclaims for collection of the underlying debt were permissive rather than compulsory).

Given that Ally's counterclaim is permissive, the Court must still determine whether supplemental jurisdiction exists over the counterclaim. The Court will

---

[1] Ally's Brief in Opposition to the pending motion addresses "permissive counterclaims," but Ally does not specifically admit that its Counterclaim is permissive. (ECF 13 at 4).

9

presume, for purposes of the pending Motion, that at least some permissive counterclaims fall within federal court's supplemental jurisdiction. *See Graf*, 2015 WL 632180, at *5 (finding "persuasive the authority holding that the 'case or controversy' standard in § 1367(a) is broader than Rule 13's 'transaction or occurrence' standard, so that at least some permissive counterclaims come within the Court's supplemental jurisdiction") (citing *Global NAPs, Inc. v. Verizon New England, Inc.*, 603 F.3d 71, 76 (1ˢᵗ Cir. 2010) (other citations omitted).

As stated above, for the Court to have supplemental jurisdiction over Ally's permissive counterclaim, the counterclaim "must derive from a common nucleus of operative fact." *Graf*, 2015 WL 632180, at *5. Ally argues, in opposition to Ally's Motion to Dismiss its counterclaim, that Riazi's TCPA claim and its breach of contract claim "share a common nucleus of operative fact," and that "there is no compelling reason" for Court to refuse to exercise supplemental jurisdiction. (ECF 13 at 3) (citing 28 U.S.C. § 1367).

As discussed above, in cases challenging a debt collector's conduct in attempting to collect a debt, under a federal consumer protection statute, some courts have asserted supplemental jurisdiction over counterclaims to collect an underlying debt based on the logic that a defendant's conduct in attempting to collect the debt and the defendant's counterclaims for the underlying debt are sufficiently factually related "so that they derive from a common nucleus of

operative fact." *Graf*, 2015 WL 632180, at *6 (citations omitted). Other courts, however, have found to the contrary. *Id.* at *5. (citations omitted).

In any case, in order to determine whether Riazi's TCPA claim and Ally's breach of contract claim share a common nucleus of operative facts, it is necessary to examine the elements of the parties' causes of action. "A breach of contract action [under Missouri law] includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Braughton v. Esurance Ins. Co.*, 466 S.W.3d 1, 8 (Mo. Ct. App. 2015) (quoting *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc)). By its plain language, to prove a defendant violated the TCPA, § 227(b)(1)(A), a plaintiff must establish that: (1) the defendant called his or her cell phone; (2) defendant did so using an ATDS or an artificial or prerecorded voice; and (3) defendant did so without the plaintiff's prior express consent.[2] *Wright v. Target Corp.*, 2015 WL 8751582, at *4 (D. Minn. Dec. 14, 2015) (unreported) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (internal quotation and citation omitted).

---

[2] Riazi alleges that she revoked any prior consent, actual or implied. (ECF 1, ¶ 28). The Federal Communications Commission has ruled that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72, 30 F.C.C.R. 7961 (July 10, 2015).

Riazi's claim under the TCPA is based on Ally's using an ATDS to call and text her cell phone after she requested Ally cease doing so. Although, as acknowledged by Riazi, it is "likely that the reason [Ally] placed these calls to [Riazi's] cell phone was related to" the debt which is the subject of Ally's counterclaim (ECF 12 at 4), the Court finds that the operative facts of Ally's breach of contract counterclaim are distinct and separate from the operative facts necessary for Riazi's proving her TCPA claim. In particular, the existence of a contract between Riazi and Ally, Riazi's default under the contract, and the amount and nature of Riazi's alleged debt are not relevant to Riazi's proving her TCPA claim. Considering the necessary elements of a TCPA claim and the necessary elements of a breach of contract claim, the Court finds that the proof necessary to establish Riazi's TCPA claim and Ally's counterclaim differ. This reasoning suggests that Riazi's TCPA claim and Ally's breach of contract counterclaim are not derived from a common nucleus of operative facts, and that, therefore, this Court does not have supplemental jurisdiction over Ally's counterclaim. *See e.g., Ramsey v. Gen. Motors Fin. Co., Inc.*, 2015 WL 6396000, at *2 (M.D. Tenn. Oct. 22, 2015) (unreported) ("Although Plaintiff's [TCPA] claim, from a broad perspective, arose from the underlying debt upon which Defendant sues, a closer look reveals that the operative facts from which Plaintiff's federal claim arose are separate and different from the operative facts from which Defendant's state law

[breach of contract] claim arose."; "The proof needed to establish Defendant's violation of the TCPA (e.g., calls made, without express consent, with an automatic telephone dialing system or an artificial or prerecorded voice) is different from the proof needed to establish Plaintiff's breach of the Contract (e.g., existence of a valid contract, default, damages).").

Alternatively, assuming Riazi's TCPA claim and Ally's breach of contract counterclaim do arise from a common nucleus of operative facts, the goals of judicial economy and efficiency would be served, to some extent, by the Court's exercise of jurisdiction over Ally's counterclaim, in that "all claims related to [Riazi's] alleged . . . debt w[ould] be resolved in a single action." *Graf*, 2015 WL 632180, at *7 (internal quotation and citation omitted).

The TCPA, however, is a remedial statute meant to protect consumers from certain telephone calls "thought to be an invasion of consumer privacy and even a risk to public safety." *In re Rules and Regulations Implementing the TCPA of 1991*, 18 F.C.C.R. 14010, 14018 (July 3, 2003). Further, because the TCPA is a remedial statute, it should be liberally construed in favor of the consumer. *See Hage v. Gen. Serv. Bureau*, 306 F. Supp.2d 883, 887 (D. Minn. 2003) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)). Further, permitting the collection of an underlying debt by way of a counterclaim in a plaintiff's federal TCPA action creates "the risk of a chilling effect" on the plaintiff's bringing a

TCPA action. *Graf*, 2015 WL 632180, at *6 ("Given the remedial nature of the FDCPA and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of . . . the target of the very legislation under which a FDPCA plaintiff states a cause of action.") (citation omitted).

Indeed, the amount of Riazi's underlying debt may be small ($16,052.43, plus finance charges, interest, costs, and fees), compared to the amount of damages she seeks under the TCPA ($1,500 for willful violations of the TCPA, with over 200 alleged unlawful telephone calls, plus text messages), but, as stated by the court in *Graf*, 2015 WL 632180, at *6:

> [W]hether the amount owed on an underlying debt is significant enough to deter a potential FDCPA plaintiff if [her] debt collector is permitted to assert a claim for the debt, or so "small" that a plaintiff will move forward with his FDCPA action regardless of whether it will provide a federal forum for his debt collector is entirely subjective. Exercising jurisdiction over [the defendant's] counterclaims on the ground that the amount of the alleged underlying debt is minimal in the eyes of [the defendant], or the Court for that matter, plainly undermines the remedial purpose of the FDCPA and its goal of "protect[ing] individuals from unfair debt collection practices regardless of whether the individual actually owes a debt." *Sparrow*, 385 F.Supp.2d at 1071 (citing *Baker*, 677 F.2d at 777); *see also Taylor*, 2012 WL 4092508 at *3 (declining to exercise jurisdiction over claim for underlying debt under § 1367(c)(4) where amount of debt was alleged to be $960.82).

The Court finds *Graf*'s reasoning compelling, and that the Court's asserting supplemental jurisdiction over Ally's breach of contract counterclaim would

clearly undermine the remedial purpose of the TCPA and its goal of protecting consumers from unwanted automated telephone calls and of "curbing calls that are a nuisance and invasion of privacy." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3rd Cir. 2013) (citing S. Rep. 102–178, at 5 (1991); *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (other citations omitted). The Court finds, therefore, that, even if Ally's counterclaim for collection of Riazi's alleged underlying debt is a permissive counterclaim within the court's supplemental jurisdiction under § 1667(a), the facts of this matter present "exceptional circumstances" where "there are compelling reasons for declining jurisdiction" over the counterclaim, as described in 28 U.S.C. § 1367(c)(4). *See Graf*, 2015 WL 632180, at *6-8.

Finally, Ally argues that its breach of contract counterclaim comes under the "'defensive set-off' exception to Fed. R. Civ. P. 13(b)." (ECF 13 at 9). "[A] defensive set-off does provide an exception to Rule 13(b) of the Federal Rules of Civil Procedure and may be asserted in the federal forum, despite the absence of an independent jurisdictional basis." *Binnick v. Avco Fin. Servs. of Neb., Inc.*, 435 F. Supp. 359 (D. Neb. 1977). A valid set-off, however, is "not enough to overcome the public policy reasons behind declining jurisdiction," including protecting consumers "regardless of the validity of the underlying debt." *Campos v. Western Dental Services, Inc.*, 404 F. Supp.2d 1164, 1170 (N.D. Cal. 2005). As such, the

Court finds Ally's "defensive set-off" argument is without merit.

As such, the Court finds that the compelling reasons articulated above establish exceptional circumstances sufficient for the Court's declining jurisdiction over Ally's counterclaim pursuant to 28 U.S.C. § 1367(c)(4). The Court will, therefore, grant Plaintiff's Motion to Dismiss Defendant's Counterclaim.

## CONCLUSION

For the reasons stated above, the court finds that Ally's breach of contract counterclaim should be dismissed and that, therefore, Riazi's Motion to Dismiss Defendant's Counterclaim should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendant's Counterclaim (ECF 12) is **GRANTED**.

Dated this 26th Day of September 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE