UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ELAINE RIAZI, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| V. | ) | Case No. 4:17CV1705JCH |
|  | ) |  |
| ALLY FINANCIAL, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

Before the Court is Defendant Ally Financial Inc.'s Motion to Stay. (ECF 14). The Motion is fully briefed and ready for disposition.

## BACKGROUND

On June 16, 2017, Plaintiff Elaine Riazi filed a Complaint against Defendant Ally Financial, Inc., (Ally) based on the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.* (ECF 1).

Riazi's Complaint alleges that Ally made over two hundred phone calls to her cellular phone, without her consent, by using an automatic telephone dialing system (ATDS), in violation of the TCPA. (ECF 1). Specifically, Riazi alleges: Ally placed calls to her cellular telephone; the calls were not for emergency purposes; the calls were to collect payments on an alleged debt; Ally *placed these calls by using ATDS*; Riazi *withdrew any prior express consent* for Ally to use an

ATDS to call her cell phone; on June 29, 2016, *Riazi instructed Ally to stop calling her cell phone*; *since that date, Ally called Riazi's cell phone approximately two hundred times*; Riazi also received numerous text messages from Ally; Riazi received numerous voicemails from Ally where she heard beeps or silence on the other end of the line; Ally used an ATDS to place these calls and texts; and Ally placed these calls voluntarily and of its own free will. (ECF 1, ¶¶ 7-29).

In the pending Motion, Ally asks the Court to stay this matter pending a decision by the D.C. Circuit Court of Appeals in the matter of *ACA International v. Federal Communications Commission (FCC)*, Case No. 15-1211 (*ACA Appeal*). The *ACA Appeal* challenges the FCC's July 2015 Declaratory Ruling and Order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) (the *2015 FCC Order*). According to Ally, the two issues before the D.C. Circuit are as follows:

> (1)  Whether equipment constitutes an ATDS if it merely has the potential to randomly or sequentially generate telephone numbers to be dialed; and
>
> (2)  Whether the FCC unilaterally imposed an unworkable regime for handling revocation of consent by ruling that any revocation, whether verbal or written, would be sufficient so long as it was "reasonable" under the circumstances.

(ECF 15 at 3).

## LEGAL FRAMEWORK

As relevant, the TCPA, 47 U.S.C. § 227(b)(1), provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States -

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

…

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

To prove a defendant violated the TCPA, § 227(b)(1)(A), a plaintiff must establish that: (1) the defendant called his or her cell phone; (2) defendant did so using an ATDS or an artificial or prerecorded voice; and (3) defendant did so without the plaintiff's prior express consent. *Wright v. Target Corp.*, 2015 WL 8751582, at *4 (D. Minn. Dec. 14, 2015) (unreported) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (internal quotation omitted).

As relevant, in regard to "autodialers," the *2015 FCC Order* states, in part:

10. We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. . . . .

. . . .

12. The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity-(A) to store or produce telephone

numbers to be called . . . ." In the 2003 TCPA Order, the Commission found that, in order to be considered an "automatic telephone dialing system," the "equipment need only have the "'capacity to store or produce telephone numbers." The Commission stated that, even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition.

. . . .

17. . . . . [W]e reiterate what the Commission has previously stated regarding the parameters of the definition of "autodialer." . . . . [T]he Commission has also long held that the basic functions of an autodialer are to "dial numbers without human intervention" and to "dial thousands of numbers in a short period of time." How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination.

30 FCC Rcd. 7961, 7971-75 (July 10, 2015).

In regard to revoking consent, the *2015 FCC Order* states, in part:

55. Next we clarify that *consumers may revoke consent through any reasonable means*. . . . .

56. We turn first to the threshold issue of whether a consumer has the right to revoke previously-given prior express consent. Because the TCPA does not speak directly to the issue of revocation, the Commission can provide a reasonable construction of its terms. We agree with the Third Circuit that, "in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers." We therefore find the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts. This gives consent its most appropriate meaning within the consumer-protection goals of the TCPA. By contrast, an interpretation that would lock consumers into receiving unlimited, unwanted texts and voice calls is counter to the consumer-protection purposes of the TCPA and to common-law notions of consent.

4

. . . .

58. *Our decision also finds support in the well-established common law right to revoke prior consent.*

. . . .

63. We next turn to whether a caller can designate the exclusive means by which consumers must revoke consent. We . . . find[] that callers may not control consumers' ability to revoke consent.

. . . .

70. Finally, [in regard to the argument] that allowing oral revocation puts defendant callers at a disadvantage . . . *we [] find that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept.*

30 FCC Rcd. at 7973-7999 (emphasis added).

A district court has the authority to stay a case pursuant to its inherent authority to "control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A court's inherent power to stay a case is also intended for purpose of conserving judicial resources and providing "for a just determination of the cases pending before it." *Webb v. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir. 1986).

Upon exercising its judgment as to whether a matter should be stayed, a court which "must weigh competing interests and maintain an even balance."

5

*Landis*, 299 U.S. at 254-55 (citations omitted). A court must "weigh[] the potential prejudice or hardship to the parties, as well as the interest of judicial economy." *Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 526 (E.D. Mo. 2015) (citations omitted). The party seeking a stay must demonstrate a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* The burden rests with the party moving for a stay to demonstrate that it is appropriate. *Edwards v. Oportun, Inc.*, 193 F. Supp.3d 1096, 1101 (N.D. Cal. 2016) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). "In any event, the decision whether to grant or deny a request for a stay is a matter lying within the sound discretion of the district court." *Webb*, 800 F.2d at 808 (citations omitted).

## DISCUSSION

Ally contends the ACA Appeal "*could be* dispositive" of issues presently before this Court. (ECF 15 at 3) (emphasis added). Ally also argues the "burden of litigation on the parties and Court will be reduced by a stay," the "issues will be simplified and the trial will be streamlined by [a] stay," and Riazi "will not be

prejudiced by a stay." (ECF 15 at 11-12). For the following reasons, the Court finds Ally's arguments unpersuasive.

First, even prior to the issuance of the *2015 FCC Order*, which specifically provides that "consumers may revoke consent through any reasonable means," the Eighth Circuit held, in *Brenner v. American Education Services*, 575 Fed. Appx. 703 (8th Cir. 2014) (per curiam), that if the plaintiff had "effectively revoked" his consent, then the district court should not have granted summary judgment in an action brought pursuant to the TCPA. Upon reaching this conclusion in *Brenner*, 575 Fed. Appx. 703, the Eighth Circuit considered that the Third Circuit held, in *Gager v. Dell Financial Services, LLC*, that, even in the absence of an express statutory right, consumers have the right to revoke their consent to receive autodialed calls. 727 F.3d 265, 270 (3d Cir. 2013) ("Although the TCPA does not expressly grant a right of revocation to consumers who no longer wish to be contacted on their cellular phones by autodialing systems, the absence of an express statutory grant of this right does not mean that the right to revoke does not exist."). Notably, the court, in *Gager*, 727 F.3d at 270-71, found that the right to revoke consent under the TCPA "is consistent with the basic common law principle that consent is revocable," and is consistent with the remedial purpose of the TCPA to "protect consumers from unwanted automated telephone calls." (quoting Restatement (Second) of Torts § 892A, cmt. i (1979) ("[C]onsent is

7

terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.") (other citations omitted).

The Eighth Circuit further considered in *Brenner*, 575 Fed. Appx. 703, that the Eleventh Circuit had reached the same conclusion as the Third Circuit regarding the common law right to revoke consent. (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255-56 (11th Cir. 2014) (finding a common law right to revoke consent where a consumer brought suit pursuant to the TCPA). As such, the Court finds that Ally has failed to demonstrate that it is likely that well-established law regarding a consumer's right to revoke consent will be changed by a decision of the D.C. Circuit.

Second, although Ally argues that judicial economy will be served by a stay in that unnecessary discovery will be avoided, according to the parties, discovery in this matter has not yet been conducted. The nature of Riazi's alleged revocation of consent and the characteristics of the device used to call her have, therefore, not been established. As such, the D.C. Circuit's opinion will not dispense with the need for discovery. *See Edwards*, 193 F. Supp.3d at 1102 (quoting *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (unreported) ("Even if the D.C. Circuit were to modify or vacate the *2015 FCC Order*, factual disputes, such as whether an ATDS [] was used and whether text recipients provided their consent, will remain here," thus necessitating discovery). In any

8

case, defending a lawsuit, "without more, does not constitute a clear case of hardship or inequity." *Dister v. Apple-Bay East, Inc.*, 2007 WL 4045429, at * 4 (N.D. Cal Nov. 15, 2007 ) (unreported) (citing *Landis*, 299 U.S. 248).

Third, the Court is mindful that the TCPA is a remedial statute designed to protect consumers, such as Riazi, from "unwanted automated telephone calls" and to "curb[] calls that are a nuisance and invasion of privacy." *Gager*, 727 F.3d at 270 (citing S. Rep. 102-178, at 5 (1991); *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (other citation omitted). The passage of time will, therefore, be inconsistent with those purposes as it will prejudice Riazi. *See Edwards*, 193 F. Supp.3d at 1101 (noting delay would increase the risk that evidence would dissipate) (citing *Lathrop*, 2016 WL 97511, at *4).

Fourth, although Ally suggests that the D.C. Circuit will render an opinion soon after oral argument in October 2017, Ally has no basis for such a statement. (ECF 15 at 11). It cannot be determined when the D.C. Circuit will issue its decision in the *ACA Appeal*. In fact, Ally acknowledges that the petitions of nine separate companies have been consolidated in the *ACA Appeal*. (ECF 15 at 2). Given the complexity of the *ACA Appeal* and the number of parties, it is not likely that the D.C. Circuit's opinion will issue quickly. Were the Court to grant a stay pending that decision, considerable time would be wasted in regard to the progress of Riazi's cause of action. As such, the purposes of the TCPA would not be

served. Even assuming that the D.C. Circuit's opinion will issue soon after oral argument, it is not likely that the decision will be final, as the party failing to prevail will likely appeal to the Supreme Court. "Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to [Riazi]." *Edwards*, 193 F. Supp.3d at 1101 (quoting *Lathrop*, 2016 WL 97511, at *4) (internal quotation marks omitted).

Fifth, although Ally cites cases from jurisdictions where litigation has been stayed pending the decision of another court,[1] Riazi cites cases to the contrary. (ECF 17 at 5-6). Notably, *Rodriquez v. DFS Servs., L.L.C.*, 2016 WL 369052, at

---

[1] In *Flockhart v. Synchrony Bank*, 2017 WL 3276266 (N.D. Iowa Aug. 1, 2017) (slip opinion), the court found in favor of a stay pending a ruling in the *ACA Appeal*, noting that "[f]ederal courts have split decisions in motions to stay TCPA violation cases where the defendant allegedly had used an ATDS." *Citing, e.g.*, *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096 (N.D. Cal. 2016) (denying motion to stay; *Gage v. Cox Communc'ns, Inc.*, 2017 WL 1536220 (D. Nev. Apr. 27, 2017) (unreported) (granting motion to stay); *Tilley v. Ally Fin., Inc.*, 2017 WL 1732021 (E.D. Mich. Apr. 26, 2017) (unreported) (granting motion to stay); *Doerken v. USAA Savings Bank*, 2017 WL 1534186 (C.D. Cal. Apr. 26, 2017) (unreported) (granting motion to stay); *Jacobs v. Ocwen Loan Servicing, LLC*, 2017 WL 1733855 (S.D. Fla. Apr. 14, 2017) (unreported) (granting motion to stay); *Lilly v. Synchrony Fin.*, 2017 WL 1370698 (D. Nev. Apr. 7, 2017) (unreported) (granting motion to stay); *Ankcorn v. Kohl's Corp.*, 2017 WL 395707, at *2 (N.D. Ill. Jan. 30, 2017) (unreported) (granting motion to stay); *Reynolds v. Time Warner Cable*, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017) (unreported) (granting motion to stay); *Maksymowski v. Navient Solutions, Inc.*, 2017 WL 486941 (E.D. Mich. Jan. 12, 2017) (unreported) (granting motion to stay); *Jones v. AD Astra Recovery Servs., Inc.*, 2016 WL 3145072 (D. Kan. June 6, 2016) (unreported) (denying motion to stay). (not all citations included).

\*3 (M.D. Fl. Feb. 1, 2016) (unreported), cited by Riazi, held that issues before the DC Circuit regarding the *2015 FCC Order* did not warrant staying the matter because the law of the Eleventh Circuit, "under a previous FCC Order," provides that a plaintiff is free to orally revoke consent under the TCPA. (citing 27 FCC Rcd. 1830; *Osorio*, 746 F.3d at 1256). The court further held, in *Rodriquez*, that "[t]he challenges before the D.C. Circuit [would], therefore, have no effect on the viability of [the plaintiff's] lawsuit as pled in her complaint"; "*the D.C. Circuit will have the power, should it decide to do so on the merits, to enjoin, set aside, suspend (in whole or in part), or [ ] determine the validity of . . . [the FCC Order]*." 2016 WL 369052, at \*3 (internal quotation marks and citations omitted) (emphasis added).

Furthermore, *Degnen v. Dental Fix RX, LLC*, 2016 WL 4158888 (E.D. Mo. Aug. 5, 2016) (unreported), cited by Ally, is distinguishable. The defendant, in *Degnen*, 2016 WL 4158888, at \*2, requested that the matter be stayed pending the *defendant's own petition* regarding "retroactive waiver," which was *filed with the FCC*, rather than the D.C. Circuit. The issue before the district court was whether the defendant's "agents were required to include an opt-out notice under the TCPA on the fax it sent to" the plaintiff. The district court's determination to stay, in *Degnen*, 2016 WL 4158888, at \*2, was based on the Eighth Circuit's opinion in *Nack v. Walberg*, 715 F.3d 680, 687 (8th Cir. 2013), which held that a court

generally must defer to an *agency's interpretation* of its own regulation, and ordered that, on remand, the district court could "entertain any requests to stay proceedings for pursuit of administrative determination of the issues raised." In the matter under consideration, the FCC has clearly interpreted provisions of the TCPA relating to what constitutes an ATDS and a consumer's right to revoke consent, and Ally seeks a stay pending a decision of the D.C. Circuit, rather than a ruling by the FCC. As such, the Court finds that *Nack*, 715 F.3d 680, is not applicable to a determination of whether a stay is appropriate in the mater under consideration.[2]

Sixth, the TCPA, 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."), grants the FCC rule-making authority to implement the provisions of the TCPA. The *2015 FCC Order* reaffirms the FCC's prior orders addressing ATDS. *See In the matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd., 7971-72, ¶ 10 (July 10, 2015) (quoted above); *In the matter of*

---

[2] Ally also cites this court's Memorandum and Order in *Suzanne Degnen, D.M.D., P.C. v. Megadent, Inc.*, 4:15CV929ERW (Aug. 31, 2015) (ECF 27). In *Degnen v. Megadent*, 4:15CV929ERW, as in *Degnen v. Dental Fix RX, LLC*, 2016 WL 4158888 (E.D. Mo. Aug. 5, 2016) (unreported), the defendant asked for a stay based on its own petition filed with the FCC. In its Memorandum and Order granting a stay, the court cited *Nack v. Walberg*, 715 F.3d 680 (8th Cir. 2013). Notably, the court ultimately dismissed *Degnen*, 4:15CV929ERW, pursuant to a Stipulation of Dismissal. (ECF 56).

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566, ¶ 12 (Jan. 4, 2008) ("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14091-92, ¶ 132 (July 3, 2003) ("The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an 'automatic telephone dialing system,' the equipment need only have the 'capacity to store or produce telephone numbers.'"). Ally has failed to demonstrate that the long standing definition of ATDS, established pursuant to the FCC's rulemaking authority, will be changed as a result of D.C. Circuit's opinion.

Having carefully weighed the competing interests, including judicial economy and prejudice to the parties, and giving particular significance to the fact that discovery has not yet commenced, the Court finds that Ally has failed to demonstrate that a stay of this matter is appropriate at this time. *See Landis*, 299 U.S. at 254-55; *Edwards*, 193 F. Supp.3d at 1101; *Boswell*, 311 F.R.D. at 526. As such, the Court finds that this matter should not be stayed pending the D.C. Circuit's decision in the *ACA Appeal*, and that Ally's Motion to Stay should be denied.

## CONCLUSION

For the reasons set forth above, the Court finds that Ally's Motion to Stay (ECF 14) should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ally Financial, Inc.'s Motion to Stay (ECF 14) is **DENIED**.

Dated this 26th Day of September 2017.

/s/ Jean  C. Hamilton
UNITED STATES DISTRICT JUDGE